**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
F I L E D

DEC 2 3 2021

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **STATE OF TEAS,** *ex rel.* **JANE DOE** | § | |
| **Plaintiffs,** | § | **COMPLAINT FILED UNDER SEAL** |
| **vs.** | § | **PURSUANT TO** |
| | § | **31 U.S.C. 3730(b)(2)** |
| **THE UNIVERSITY OF TEXAS** | § | |
| **HEALTH SCIENCE CENTER AT** | § | **CIVIL ACTION NO. 4:21-CV-001574** |
| **HOUSTON** | § | |
| **Defendants** | § | |

## <u>RELATORS' SECOND AMENDED COMPLAINT</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES**, THE UNITED STATES OF AMERICA ("USA") *ex. rel.* JANE DOE ("Relator" or "Ms. Doe"), Plaintiffs in the above styled and numbered cause, and files this First Amended Complaint against THE UNIVERSITY OF TEXAS HEALTH SCIENCE AT HOUSTON (herein "UTHealth"), the Defendant in this matter and for such cause of action would respectfully show the Court as follows:

### I.     PARTIES

1.     Ms. Jane Doe is the Relator and is an individual who resides in Houston, Harris County, Texas. Ms. Doe is an employee of UTHealth who has first-hand knowledge of unlawful billing practices conducted by UTHealth systematically and extensively. As required under the False Claims Act, 31 U.S.C. §§ 3729 and 3730 *et. seq.*, a copy of this Complaint and written disclosure of all material evidence the Relator possessed at the time the Original Complaint was filed has been provided to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas. Additionally, as required under the Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code §§ 36.001-132, a copy of this Complaint and written disclosure of all material evidence the Relator possessed at the time the Original Complaint

was filed has been provided to the Attorney General of the State of Texas.

2.      Ms. Doe in her capacity as Relator has direct and independent knowledge of the facts underlying this complaint. Relator is an "original source" as that term is defined under 31 U.S.C. § 3730(e). The facts and allegations underlying this complaint have not been publicly disclosed, as public disclosure is defined under 31 U.S.C. § 3730.

3.      UTHealth is a business that staff administrators, physicians, and provides health care related services to patients in all levels of care from general doctors' visits to emergency room visits. UTHealth has operations in Houston, Texas with its principal place of business in Houston, Harris County, Texas.  Service may be obtained by serving UTHealth President, Dr. Giuseppe N. Colasurdo, M.D., at 7000 Fannin Street, Suite 1200, Houston, TX 77030, or wherever he may be found.

4.      This complaint is filed *in camera*, under seal, and may not be served upon any of the Defendants until further order of this Court.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 31 U.S.C. § 3720(b) and 3732, which provide that any action under § 3730 may be brought in any judicial district in which the Defendant(s) resides or transacts business or in which any act proscribed by 31 U.S.C. § 3729 occurred. The Defendant, UTHealth, maintains operations in this jurisdiction.

6.      This Court has supplemental jurisdiction over Plaintiff's pendent state law claim pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this District and division pursuant to 31 U.S.C. § 1391(a) and (c), because a substantial part of the events or omissions giving rise to the claim occurred in this District and it is the District in which the Defendants' business is located and operated.

## III. INTRODUCTION

**8.** This is an action to recover damages and civil penalties on behalf of the United States of America and the State of Texas arising from false and/or fraudulent records, statements and claims made, used and caused to be made, used or presented by the Defendant, UTHealth and/or its agents and employees in violation of the Federal Civil False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq.*, and the Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code §§ 36.001-132.

## IV. FACTS

**9.** UTHealth is a health & science practice system that provides health related services to patients, staffs doctors, trains students, and has administrative oversight of related departments not limited to revenue cycle management and accounts receivable operations. UTHealth provides outpatient and inpatient services that span from general doctor visits to surgeries to individuals who have Medicare, Medicaid, Veterans Administration coverage, or private insurance in Houston, Texas. Medical claims submitted to these payers are eligible for reimbursement. However, UTHealth is engaging in, and in the past has engaged in, a systematic pattern and practice of intentionally or recklessly submitting false and fraudulent claims for reimbursement to Federal and state-funded health insurance programs, private, commercial insurance plans and non-insured patients.

**10.** Specifically, UTHealth has illegally up-coded CPT codes to generate revenue to which Senior Leadership had knowledge of and has continuously failed to rectify. More precisely, UTHealth up-codes emergency room (herein "ER") CPT codes as a means of receiving greater reimbursement from the forementioned payers. In addition to the fraudulent practice of upcoding, UTHealth' overutilization of CPT codes 99284 and 99285 is generating more denials and medical

records reviews which directly or indirectly, results in unnecessary costs to the healthcare system, including the Medicare and Medicaid programs.

In a meeting held on April 08, 2021 with the Revenue Cycle Management, the Accounts Receivable Manager who is responsible for resolving denied ER claims, stated that the ER was losing money due to the ER Coding Team appearing to bill for an ER level of care not provided to the patient and thus insurance companies were denying the claims. The conversation in that meeting included affirmation that the head coding administrator of ER Operations Coding was previously told to code appropriately, however, has refused do so and continues to falsely and intentionally bill CPT code 99285, the highest level of ER at a rate of $1957.00, instead of billing the appropriate severity of ER care that the patient received which could result in a lower reimbursement rate. Consequently, when Medicaid, Medicare, and private insurance are billed for the claims, the claims are immediately denied because the appropriate code was not billed and the medical records do not support the billed code. Whenever Medicaid, Medicare, and private insurance denies paying for a covered service due to improper coding, the provider has the opportunity to correct the claim and resubmit the charges. While UTHealth appeals some of the claims, a significant number of the claims for govern payers, such as Medicare and Medicaid are written off, as opposed to sending in cor. When writes off many of the Medicare claims resulting in Medicare recipients not being charged their correct coinsurance and deductibles.

In another example, under the Medicaid Healthy Texas Woman program (herein "HTW"), ER visits normally are not covered and UTHealth may bill the HTW client directly. In order to qualify for the HTW program, the patient must meet a Federal Poverty Level guideline in accordance with their household size and not have health insurance. In a very predatory practice, UTHealth charges the already economically disadvantaged Medicaid HTW patient the highest coding rate, regardless of the level of care provided. UTHealth is well aware that the HTW

insurance does not cover the ER claim, but instead of billing the HTW patient, UTHealth bills the HTW insurance first at the highest level of care, CPT code 99285, despite the medical record not reflecting the level of care being billed. The HTW insurance then automatically denies the bill due to the improper level of care code. Upon the denial, rather than correct and resubmit the claim at the proper level of care, UTHealth will then submit the claim directly to the Medicaid HTW patient. If the HTW patient challenges the bill, UTHealth will use the insurance denial to solidify that the patient owes the stated amount and the patient has no option but to pay the amount billed. Many HTW patients are unable to pay and UTHealth writes off the claim without resubmitting an accurate claim. The HTW patient is then turned over to collections although many of the claim the claims are written off as "bad debt" for the organization. The collection efforts may negatively impact the HTW patient's credit score which puts the patient in an even more economic vulnerable position. In the instances the HTW patient manages to pay the UTHealth claim, they do so unaware they are being charged a higher rate than the service they received. Unlike health insurance companies who routinely examine claims for errors, the HTW patient lacks the knowledge to distinguish a code error in a claim with or without access to their medical records. Generally, HTW patients should be refunded any amount paid on a false or fraudulent claim billed at a higher severity of care than delivered.

The following examples are HTW denied claims that are then billed to the HTW patient:

    i.  **INV 42573954** - Upon billing to Medicaid, the claim was denied by the HTW program and the patient responsibility on Medicaid's claim TCN *10002003203201932321264936* states $0. Medicaid denied the claim as non-covered, and the service does not meet the criteria for the category under which it billed (CPT code 99285). UTHealth billed the patient and ultimately turned the account over to a collection agency. The account remains in collections.

    ii.  **INV 44601168** - Upon billing to Medicaid, the claim was denied by the HTW program and the patient responsibility on Medicaid's claim TCN *10002003202018102605439* states $0. Medicaid denied the claim as non-

covered, and the service does not meet the criteria for the category under which it billed (CPT code 99285). UTHealth billed the patient and turned the account over to a collection agency. The account remains in collections.

iii. **INV 44987804** - Upon billing to Medicaid, the claim was denied by the HTW program and the patient responsibility on Medicaid's claim TCN *10002003020202020510111328* states $0. Medicaid denied the claim as non-covered, and the service does not meet the criteria for the category under which it billed (CPT code 99285). UTHealth billed the patient and turned the account over to a collection agency. The account remains in collections.

iv. **INV 44942261**- Upon billing to Medicaid, the claim was denied by the HTW program and the patient responsibility on Medicaid's claim TCN 1*00020030202020008321823* states $0. Medicaid denied the claim as non-covered, and the service does not meet the criteria for the category under which it billed (CPT code 99285). UTHealth billed the patient and turned the account over to a collection agency. The account remains in collections.

11.     UTHealth continues its' fraudulent billing tactics on patients with Medicare and commercial insurances. Many of the claims are written-off, as opposed to billing the patient for the balance. UTHealth does not bill the most appropriate service level nor is the claim refiled with the code that reflects the accurate level of care provided to the patient. Additionally, UTHealth is harming and putting physicians at risk by submitting a level of care not provided. UTHealth is losing money owed to physicians who are unaware UTHealth is habitually upcoding their services resulting in claim denials. Furthermore, UTHealth is noncompliant with Medicare regulations and provider contracts by fraudulently billing in a manner that impacts collecting the contractually owed patient responsibility that is payable if the claim was filed correct (copays, deductibles or 20% of the Medicare approved amount for the appropriate level of emergency room care). UTHealth's billing practices are wasteful, and UTHealth is abusing the highest severity of emergency care codes (CPT code 99285) and (CPT code 99284) to generate a higher level of revenue than owed.

The following invoices are examples of billing where the most life-threatening codes (CPT 99285) and (Code 99284) were used on the claims and denied by the payer:

 i. **INV 43963805** Denied as documentation does not support charges (Medicaid HMO)

 ii. **INV 46920593** (CPT 99285) Denied as documentation does not support charges (PPO)

 iii. **INV 46593552** (CPT 99285) Denied as documentation does not support charges (PPO)

 iv. **INV 42224194** (CPT 99285) Denied as documentation does not support charges (PPO)

 v. **INV 44861981** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 vi. **INV 46675460** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 vii. **INV 40526010** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 viii. **INV 41425410** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 ix. **INV 46883330** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 x. **INV 40237106** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 xi. **INV 42197566** (CPT 99285) Denied as documentation does not support charges (Medicaid HMO)

 xii. **INV 41078285** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 xiii. **INV 40237106** (CPT 99285) Denied as documentation does not support charges (Medicare/MCO)

 xiv. **INV 42595675** (CPT 99285) Denied as documentation does not support charges (PPO)

 xv. **INV 43818230** (CPT 99285) Denied as documentation does not support charges (POS)

 xvi. **INV 44183007** (CPT 99285) Denied as documentation does not support charges (POS)

 xvii. **INV 43818230** (CPT 99285) Denied as documentation does not support charges (Commercial)

 xviii. **INV 46925951** (CPT 99285) Denied as documentation does not support charges (PPO)

xix. **INV 41941268** (CPT 99284) Denied as documentation does not support charges (Medicare/MCO)

xx. On May 8, 2021, UTHealth implemented a new, multi-million-dollar billing system (EPIC) that purportedly has edits and controls to stop false claims from billing. As evidenced by the claims numbers below, UTHealth's has implemented a new billing system that continues the abuse of CPT coded 99285 and 99284, improperly coded by UTHealth's Coding and Charge Capture department:

P1006772800 (UnitedHealthcare-UHC), P1006883780(UHC), P1001055970(UHC), P1006669480(UHC), P1006878320(Medicaid), P1007434910(Amerigroup Star-Plus), P1003646510(Superior Medicaid), P1003525640(Superior Medicaid), and P1003527450(Superior Medicaid).

12.     Additionally, UTHealth billing and coding staff knowingly, intentionally and continuously file false claims on behalf of referring and/or ordering providers who (1) were not involved in patient care, (2) did not refer patients for treatment, or (3) did not order patient care services. There have been requests by the Relator for billers and coders to be educated in proper billing and coding protocol, as they have been wrongfully trained to add a referring physician to claims even if the physician was not the referring provider. Some payers, such as Medicare, require that an ordering, prescribing or referring provider be indicated on the claim before the claim is paid. In one instance, a biller openly stated during a Revenue Cycle Meeting attended by the Relator that the coders regularly and knowingly look into other visit records for the patient, select a physician that most recently saw the patient, and then add the physician's information to the claim in the referring provider field as the referring physician on record. This is done without the referring physician's knowledge and in turn staff is falsifying a claim submitted under the rendering physician's signature as a true and accurate representation of the services provided and documented in the medical records. There is a documented complaint that was sent to UTHealth Senior Leadership and the UTHealth Compliance Department regarding this specific matter. However, nothing was

done and the practice of falsifying referring providers to get claims paid continues, as documented

by a recent review by the Relator.

Below are examples of the physician referral falsifications:

i. **INV 47346984:** This claim was billed with Dr. T.M. as the referring provider but he is not in the records. The coder states to change Dr. T.M. to Dr. A.C. who is not in the records. Defendant falsified this claim in an attempt to get paid. Referring provider in the records is Dr. W. H

ii. **INV 47128011**: The ECHO record lists Dr. A. D. as the ordering provider and Dr. D. A. signed the ECHO as the rendering provider. The claim was filed with NP M. J. as the referring provider. The claim was originally filed fraudulently and denied.

iii. **INV 46849211**: This claim was originally filed with Dr. J.W. as the referring provider to Dr. N. J. and the claim paid in part and denied. Coder states to change the referring to Dr. N. J. but he is the rendering provider. Dr. J.W is the referring physician from the previous hospital. But the coder states to use Dr. N. J .as the referring to get the claim paid, which is false.

iv. **INV46830294:** The ECHO record states the ordering physician is Dr. N.J. and Dr. D.A. signed the echo. The claim was filed with NP M.J. as the referring provider but the order says Dr. N.J. The claim was originally filed fraudulently and denied.

On May 6, 2021, Relator sent a spreadsheet to the Manager, Charge Capture and Coding that contained 10 claims filed to payers with false rendering and referring provider information. Filing false claim in this manner has continued since the Relator filed a compliance complaint in with the AVP.

**13.** More so, UTHealth has written off claims before billing them which has impacted patients'

deductibles, coinsurances, and copays, particularly Medicare patients. Failure to file assigned

claims timely, whether original claim submissions or corrected claims, impacts the government's

ability to assess the following:

a. The medical necessity of services provided to its clients and beneficiaries;

b. Set accurate budgets for future health services provided by State and Federal Health plans;

c. Meet the patient's contractual obligation to pay deductibles, copays, and coinsurance;

d. And remain compliant with the billing provisions set forth in provider enrollment contracts signed by the individual physicians and providers.

**14.**   Between the years of 2018 through 2021, Relator brought formal compliance complaints to UTHealth Senior Leadership and attempted to work with them to remedy any systemic billing, coding, and operational violations such as (1) billing claims on providers who had been terminated from the organization (2) not notifying Medicaid clients that services were not covered by Medicaid before rendering service, (3) failing to use the Medicaid Client Services Acknowledgment form, (4) not collecting Medicare deductibles and coinsurance appropriately due to untimely filing of all claims, and (5) failure to require revenue cycle management to read, understand and comply with regulations.

**15.**   Failure to bill all assigned Medicaid and Medicare claims due to systemic operational problems causes waste and impedes the ability to file timely, accurate claims, maintain accurate records and collect revenue associated with patient responsibility for non-covered services, deductibles, copays, and coinsurance, under the enrollee's government and commercial health care contract and as outlined in government payer provided manuals. Relator informed UTHealth Senior Leadership of the financial impact on the organization when claims are not filed or not filed correctly, enrollee/provider/plan contracts are not honored when patient responsibility is not collected due to systemic operational failures that result in claims filed untimely.

**16.**   UTHealth also intentionally conceals refundable government and commercial unidentified funds that should be returned if not identified. UTHealth creates unapplied and unidentified

accounts under false patient Medical Record Numbers (MRNs) to conceal the fact that the funds cannot be identified as being lawfully retained as payment of a service or expense owed to UTHealth. For multiple years, UTHealth has received unidentified funds and failed to refund money to payers or the State of Texas, as required under law, if the service or expense cannot be identified and applied to a service provided and billed by the UTHealth.

UTHealth has also failed to resolve overpayments on outstanding accounts and to refund money owed to payers or patients in a timely manner. UTHealth would often receive payments from Medicare, Medicaid, Treasury (VA), and private insurance to apply to dummy Medical Record Numbers (MRNs) and the funds sit in the dummy accounts undetected for years unapplied, to any service provided by UTHealth. UTHealth would then intentionally hide the payments and unidentified funds by posting them in old accounts that were no longer auditable or detectable. This system enables UTHealth to unlawfully keep money that they have a legal obligation to return.

**17.**     Medicare has a one-year (1) filing deadline and Medicaid regulations state that a claim must be filed within ninety-five (95) days upon the rending of a service. Commercial payers normally have a ninety-five (95) day filing deadline. UTHealth has failed to file claims within the deadline they are given, due to systemic claim filing deficiencies with timely posting charges to claims, verifying insurance to file claims, or clearing claim edits that prevent billing. When the Relator inquired why claims were not being filed, thereby impacting revenue, on March 22, 2021, a billing manager replied in writing that she was instructed not to do so. In addition to the statistical and budgetary impact of claims not being timely filed with Medicare, Medicaid, and private insurances, when claims are not filed timely, the patient population served is underreported, doctors lose money, inclusive of revenue from deductibles, copays, and coinsurance, which causes

a significant loss of revenue for UTHealth and misrepresents the patient population seen by UTHealth.

**18.**     In late 2020, it was clear that despite formal complaints of systemic non-compliance, UTHealth continued to engage in fraudulent and illegal activities which were repeatedly brought to the attention of the Compliance Department, verbally and in writing. As recently as May 2021, Relator discovered that the UTHealth continues to engage in these activities.

**19.**     On May 5, 2021, the Relator alerted Compliance that the new director requested the AR team to reverse self- pay status on claims and simply file them to insurance. The director stated that a system "glitch" has been going on since January 2021.  There were over 18,000 claims impacted that needed review and many of these assigned claims were billed incorrectly to patients without billing the patients' insurance carriers, inclusive of Medicaid and Medicare.  The computer "glitch" went undetected for 5 months, due to lack of internal controls. The Relator reviewed the instructions given by the Director and realized UT Health's AR Department was hurriedly trying to "cover-up" a billing issuer that caused public harm to the elderly and Medicaid patients.  Relator asked the Compliance Department to implement corrective measures to protect UT Health patients and provide guidance to protect the employees from being unwittingly complicit in any adverse action that arose from hurriedly trying to fix an issue without Compliance guidance or addressing the public harm associated with billing patients for clams they did not owe. Compliance asked the Relator for guidance, and she provided the following:

"In summary:

- Statements were sent to patients asking them to pay for charges they did not owe, in whole or part, had their insurance been filed properly.

- UT Health billed Medicaid enrollees and Medicare beneficiaries, and other insured patients, full price for claims they did not owe, without filing to Medicaid or Medicare first.

- There was public harm to the elderly because some of the claims reflected some of those elderly patients paid claims they did not owe. UT Health gave staff no direction on refunding the harmed patients.

- The system glitch went undetected so long that patients were placed in collections or sent to a collection agency, which will harm their credit and definitely caused them future harm. UT Health had no plans to notify patients of the potential harm to them financially.

- UT Health sent protected patient information to collection agencies on hundreds of patients who should not have been placed with the collection agency, is potentially a HIPAA violation. The collection agencies received collection data that should not have been disclosed to them. "

As of May 20, 2021, Compliance has not discussed this matter with the Relator.

**20.** On May 13, 2022, after being mandated to correct the claims, Relator noticed claims, included in the same project above, that involved billing uninsured COVID-19 patients, both living and deceased. UT Health received money from the Provider Relief Fund that was to be used to offset the testing and treatment of COVID-19 patients, particularly the uninsured. UTHealth should not have billed patients that were covered under the Provider Relief Fund received from the Cares Act, earmarked to cover uninsured patients. Compliance has not responded to the Relator's last request on 05/20/2021 asking UTHealth was billing uninsured COVID -19 patients when funds were received under the Cares Act. Based on published guidance for receipt of Provider Relief Funds, UTHealth should not bill uninsured COVID-19 patients, ever. The Relator was concerned about the lack of empathy for the families of uninsured COVID-19 and the greed of UTHealth billing for services paid by the provider Relief Fund. The Relator amended her last formal Compliance complaint  to include this infraction and Compliance has stopped communicating with the Relator when guidance and status of the complaint was requested.

**21.** Most recently, during a manager's meeting on June 17, 2021, the AR coding manager, who is a certified coder, discussed how in-house coders were getting denied obesity claims paid with diagnoses that may not be the actual primary obesity diagnosis in the medical records. The conversation was in the presence of all managers and supervisors, and new Director. The Relator immediately called out the practice as fraud and a risk to UT Health. After the Relator's statement, the director and the coding manager stated they planned to "talk to" the coding director-the next day. The AR coding manager stated that she was not "comfortable" with the coding team using other than the primary diagnosis to get claims paid. The Relator was upset to learn of yet another fraudulent billing practice that put UTHealth physicians and the entire organization at risk. The admission by a certified coding manager to openly acknowledged fraudulent billing practices shows how cavalier UTHealth's AR department has become with complying with the False Claims Act. The next Monday, the Relator asked the AR Coding manager to file a complaint with compliance. The Relator did not file the complaint because she felt the Compliance department had ceased communicating with her, especially after the Relator discovered UTHealth was billing uninsured COVID-19 patients and amended her complaint.

**22.** In sum, Relator has discovered that UTHealth was and is engaging in systemic fraudulent activity by knowingly submitting false claims for services billed or submitted for reimbursement were not performed as documented in the medical records, or by the providers who referred, ordered, or rendered the services.

**23.** UTHealth knew or should have known that it is illegal to add a rendering provider that was not involved in the service for which claims were submitted.

**24.** UTHealth knew or should have known that it is illegal to alter a claim submitted under the provider's signature and adding another unsuspecting provider thus creating the altered, false claim for reimbursement.

**25.** UTHealth knew or should have known that it is illegal to up-code emergency room claims reflecting a level of care that was not provided.

**26.** UTHealth knew or should have known that it is illegal to bill a Medicaid recipient for a false claim that has been denied for inappropriate coding and has not been corrected to the appropriate level of care. The patient should have no liability for a claim not billed at the appropriate level of care. Additionally, UT Health knew should have known that sending Medicaid clients to collections harms the patient's credit resulting in further economic hardship for a service that was falsely filed to Medicaid.

**27.** UTHealth knew or should have known that it is illegal to retain or convert government and insurance funds that cannot be identified and should be returned to the sender.

**28.** UTHealth knew or should have known that filing false claims in violation of the False Claim Act jeopardizes the ability of the individual physician, who is unaware of the false claims, to participate in Medicare, Medicaid and other insurance programs when false or fraudulent information is added on claims filed under the physician's signature, as well as the organization's recertification to participate in Medicare and Medicaid, and other insurance programs.

**29.** The fraudulent activity was brought to the attention of UTHealth Senior Management, and the Compliance Department and corrective actions were not taken. As recently as today's date, UTHealth continues to file claims that are not in compliance with the False Claims Act, as evidenced by its implementation of the EPIC billing system, on May 8, 2021 and knowing filing duplicate claims to all payers, which has caused double payments by insurers, voided claims that have payments that cannot be applied, and remain undistributed, in addition to causing unnecessary reviews and denials by payers because of the wastefulness of this practice. Rather than wait for the billing system to be fixed and not replicate claims, UTHealth knowingly released claims that they knew were not entitled to be reimbursed.

**30.** As a direct result of the improper and unlawful practices of UTHealth, federal and state health insurance programs including, but not limited to, Medicaid, Medicare, Treasury (VA) and private insurance, have been billed and paid for false and fraudulent claims for treatment which did not occur, treatment not rendered or referred as represented on the claim, and for visits which were not reflective of the level of care provided, in addition to failing to reimburse for unidentified accounts or for overpayment.

## IV. CAUSES OF ACTION

### A. Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)

**31.** UTHealth provides medical services to individuals that are eligible for Medicaid, Medicare, and private insurance. The Relator repeats the allegations of paragraphs 1-21 and incorporates them by reference as if fully set forth herein. Upon information and belief, UTHealth presented, or caused to be filed, false claims for payment of medical services with knowledge of their falsity, or with gross negligence or reckless disregard to facts and conditions that would indicate said claims were inaccurate or inappropriate and false and caused payments for said claims to be made by the United States Government and the State of Texas. By reason of the violation of the False Claims Act, 31 U.S.C. § 3729(a)(1), UTHealth has knowingly or recklessly damaged the United States Government and the State of Texas in an as of yet undetermined amount.

### B. Violation of the False Claims Act, 31 U.S.C. § 3729(a)(2)

**32.** The Relator repeats the allegations of paragraphs 1-21 and incorporates them by reference as if fully set forth herein. Upon information and belief, UTHealth presented, or caused to be filed, false statements or records in support of false claims for payment for medical services with knowledge of their falsity, or with gross negligence or reckless disregard to facts and conditions that would indicate that said statements or records were inaccurate or inappropriate and false and caused payments for said claims to be made by the United States Government. By reason of the

violation of the False Claims Act, 31 U.S.C. § 3729(a)(2), UTHealth has knowingly or recklessly damaged the United States Government in an as of yet undetermined amount.

**C.**     <u>**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(3)**</u>

**33.**     The Relator repeats the allegations of paragraphs 1-21 and incorporates them by reference as if fully set forth herein. UTHealth, in performing the acts described above, conspired to defraud the United States Government in violation of the False Claims Act, 31 U.S.C. § 3729(a)(3) by getting false or fraudulent claims allowed or paid to the damage of the United States Government.

**D.**     <u>**Violation of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001-132**</u>

**34.**     The Relator repeats the allegations of paragraphs 1-21 and incorporates them by reference as if fully set forth herein. UTHealth, in performing the acts described above, conspired to defraud the United States Government in violation of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001-132 by getting false or fraudulent claims allowed or paid to the damage of the State of Texas.

**E.**     <u>**Violation of the Texas Medicaid Fraud Prevention Act "TMFPA", Tex. Hum. Res. Code § 36.052**</u>

**35.**     The Relator repeats the allegations of paragraphs 1-21 and incorporates them by reference as if fully set forth herein. UTHealth, in performing the acts described above, conspired to defraud the United States Government in violation of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.052 by getting false or fraudulent claims allowed or paid to the damage of the state of Texas.

**36.**     This is a qui tam action brought pursuant to by Relator on behalf of herself and the State of Texas to recover damages and civil penalties under the Texas Medicaid Fraud Prevention Act ("TMFPA") including 36.052 and UTHealth violated the TMFPA including but not limited to the following respects:

UTHealth violated Sec. 36.002.

A person commits an unlawful act if the person:

(1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that Is not authorized or that is greater than the benefit or payment that is authorized;

(2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(3) knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received;

(4) knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

(A) the conditions or operation of a facility in order that the facility may qualify for certification or recertification required by the Medicaid program, including certification or recertification...

(B) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program.

a. Section 36.052 (a) Except as provided by Subsection (c), a person who commits an unlawful act is liable to the state for:

(1) The amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly, or indirectly, as a result of the unlawful act, including any payment made to a third party;

(2) Interest on the amount of the payment or the value of the benefit described by Subdivision (1) at the prejudgment interest rate in effect on the day the payment or benefit was received or paid, for the period from the date the benefit was received or paid to the date that the state recovers the amount of the payment or value of the benefit;

(3) A civil penalty of

(A) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. 3729(a), if that amount exceeds $5,500, and not more than $15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3719(a), if that amount exceeds $15,000 for each unlawful act committed by the person that results in the injury to an elderly person, as defined by Section 48.002(a)(1), a person with a disability, as defined by 48.002(a)(8)(A) or. A person younger than 18 years of age; or

(B) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(A), if that amount exceeds $11,000 for each unlawful act committed by the person that does not result in injury to a person described in Paragraph (A); and (4) Two times the amount of the payment or the value of the benefit described by Subdivision (1).

## V. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Relator, Jane Doe, the United States of America and The State of Texas demand a trial by jury and, after final trial, that judgment be rendered against UTHealth, jointly and severally, as follows:

A.      for damages that are as yet indeterminable, for violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), (2), and (3);

B.      for treble the damages found for violations of 31 U.S.C. § 3729(a)(1), (2), and (3);

C.      for damages that are as yet indeterminable, for violations of the False Claims Act, 31 U.S.C. 3730(h);

D.      for damages that are as yet indeterminable, for violations of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001-132;

E.      for a fine of not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $11,000, for each unlawful act committed;

F.      for litigation costs;

G.      for special damages;

H.      for reasonable attorneys' fees and costs; and

I.      for such other and further relief, at law or in equity, to which Relators are justly entitled.

Respectfully submitted,

 kennard law P.C

By: _____
Alfonso Kennard, Jr.
Attorney-in-Charge
Texas Bar No. 24036888
Southern District Bar No: 713316
5120 Woodway Dr. Suite 10010
Houston, TX 77056
(713)742-0900 (main)
(832)558-9412 (facsimile)
alfonso.kennard@kennardlaw.com

**ATTORNEY'S FOR RELATOR JANE DOE**