United States District Court
Southern District of Texas
**ENTERED**
August 27, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Jane Doe et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action H-21-1574 |
| | § | |
| The University of Texas | § | |
| Health Science Center | § | |
| at Houston, et al., | § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 72. Pending before the court are Defendant McKesson Corp.'s (McKesson) Motion to Dismiss, ECF No. 56; Defendant UT Physicians' (UTP) Motion to Dismiss, ECF No. 58; and Defendant Change Health Care Corporation a/k/a Change Healthcare Engagement Solutions, Inc.'s (Change) Motion to Dismiss, ECF No. 59. The court recommends that Defendant McKesson's Motion to Dismiss, ECF No. 56, be **GRANTED**; Defendant UTP's Motion to Dismiss, ECF No. 58, be **DENIED** without prejudice pending jurisdictional discovery; and Defendant Change's Motion to Dismiss, ECF No. 59, be **GRANTED**.

## 1. Background

The False Claims Act (FCA) imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government. 31 U.S.C. § 3729(a)(1). A private person, the relator, may bring a *qui tam* civil action "for the person and for the United States

Government" against the alleged false claimant, "in the name of the Government." *Id.* § 3730(b).

In this case, Relator alleges that Defendants UTP, McKesson, and Change each violated the FCA and the Texas Health Care Program Fraud Prevention Act[1] (THFPA, Tex. Hum. Res. Code §§ 36.00, *et seq.*). Third Am. Compl., ECF No. 39 at ¶ 1. Relator is a former employee of UTP, and she alleges that Defendants "engaged in schemes of knowingly submitting fraudulent and false claims to and for payment from federally-funded Medicare, Medicaid, TRICARE, the Veterans Administration, and other federally-funded health care programs . . . and state-operated Medicaid programs[.]" *Id.* at ¶¶ 22, 33.

Relator filed her Original Complaint against the University of Texas Health Science Center at Houston (UTHSCH) on May 7, 2021. ECF No. 1. The operative pleading now in the case is Relator's Third Amended Complaint. ECF No. 39. Relator sought leave to file her Third Amended Complaint on May 24, 2024, and the Third Amended Complaint was filed on the docket on June 4, 2024.[2] The Third Amended Complaint removed UTHSCH as a defendant and added UTP, McKesson, and Change. *See id.* Each Defendant filed a motion to dismiss. ECF Nos. 56, 58, 59. In response to Defendants' motions to dismiss, the State of Texas filed a Statement of Interest. ECF No. 66.

The court provides additional facts as needed in its analysis below.

---

[1] "The Legislature recently amended the Texas Medicaid Fraud Prevention Act and changed its name to the Texas Health Care Program Fraud Prevention Act." *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 716 n.1 (Tex. 2024).

[2] The Third Amended Complaint was again filed on the docket on August 12, 2024. ECF No. 39. As the most recently filed complaint, this is the filing that the court uses in this Memorandum and Recommendation.

2

## 2. *Motion to Dismiss Legal Standards*

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("[T]he court may not look beyond the four corners of the plaintiff's pleadings.").

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). The pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Conclusory allegations "disentitle[] them to the presumption of truth." *Iqbal*, 566 U.S. at 681. It follows that the court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

The court also may dismiss a complaint "under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred [by limitations] and the pleadings fail to raise some basis for tolling or the like." *Salas v. City of Galena Park*, Nos. 21-20170, 21-20333, 2022 WL 1487024, at *8 (5th Cir. May 11, 2022) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

### 3. Analysis

#### A. McKesson

McKesson argues that the FCA's statute of limitations bars Relator's claims against it. ECF No. 56 at 8. The FCA's statute of limitations provides that:

A civil action under section 3730 may not be brought--

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

4

31 U.S.C. § 3731(b). The Supreme Court has clarified that the FCA "contains two limitations periods that apply to a 'civil action under section 3730[.]'" *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 264 (2019).

As to the first, six-year statute of limitations period, Relator does not allege that McKesson was involved in any allegedly fraudulent conduct after March 2017. *See* ECF No. 39 at ¶¶ 5–10, 95–99, 108–10, 177–78, 188, 204. Thus, to survive the first statute of limitations, Relator must have filed suit by March 2023. McKesson argues that Relator's claims are barred by the first, six-year, statute of limitations because the claims against it were filed in June 2024. ECF No. 56 at 8–9.

Relator argues that "each fraudulent scheme alleged in the TAC occurred, in substantial part, within the six-year window immediately preceding the filing of the TAC." ECF No. 65 at 5. But Relator fails to allege that *McKesson* took any fraudulent actions or participated in any fraudulent scheme in the six years before McKesson was added as a party to the suit.

The court agrees with McKesson. Relator does not allege that McKesson committed any fraudulent acts after March 2017. Thus, because Relator did not bring any claims against McKesson until May 24, 2024, when she filed her motion for leave to file the Third Amended Complaint, Relator's claims against McKesson are barred under the six-year statute of limitations. *See* ECF No. 28 (Relator's motion to file an amended complaint "against new and additional Defendants").

The FCA states that whichever of its two limitations periods provides the later date serves as the limitations period. *Cochise Consultancy*, 587 U.S. at 264. The court thus turns to whether the claims against McKesson are barred under the FCA's second statute of limitations period.

"The second [limitations] period requires that the action be brought within 3 years after the United States official charged with the responsibility to act knew or should have known the relevant facts, but not more than 10 years after the violation." *Cochise Consultancy*, 587 U.S. at 264. Courts have found that "facts material to" the claims were known to the Government when a *qui tam* suit was initially filed. *United States ex rel. Wood v. Allergan, Inc.*, No. 19-CV-4029, 2020 WL 3073293, at *2 (S.D.N.Y. June 10, 2020) (dismissing a suit as untimely where Relator had filed two prior actions alleging the same claims he alleged in a third action); *United States ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060, 2023 WL 5152513, at *5–6 (D. Kan. Aug. 10, 2023) ("Because relator did not file the claims against WRG within three years after the 2017 disclosure, relator may not take advantage of Section 3731(b)'s 10-year statute of repose.").

Relator argues that (1) the Government "couldn't have known the relevant facts until, at a minimum, August 25, 2022, when the DOJ declined to intervene with respect to the original, amended and second amended complaints[,]" and (2) a ten-year statute of limitations applies and "cannot be ignored." ECF No. 65 at 5. The court disagrees.

Relator's Original Complaint, which was filed on May 7, 2021, states that a copy of Relator's complaint and all material evidence was provided to the Attorney General of the United States, the United States Attorney for the Southern District of Texas, and the Attorney General for the State of Texas. ECF No. 1 at 1–2. Relator does not argue that the Third Amended Complaint alleges facts materially different from those in her prior complaints. Thus, the second limitations period began running on May 7, 2021, and Relator had until May 7, 2024 to bring FCA

claims against McKesson. As the court stated above, Relator did not bring any claims against McKesson until May 24, 2024.

Relator's argument that a ten-year statute of limitations applies misstates the law. Ten years is the latest deadline to file suit, even when the government does not have actual or constructive knowledge of the violation. *See Cochise Consultancy*, 587 U.S. at 264 (requiring that the action be brought within three years after the Government knew or should have known the relevant facts, but not more than 10 years after the violation). Relator's claims against McKesson are barred by the FCA's statute of limitations.

As to Relator's claims under the THFPA, the THFPA states that:

> A person proceeding under this subsection may recover for an unlawful act for a period of up to six years before the date the lawsuit was filed, or for a period beginning when the unlawful act occurred until up to three years from the date the state knows or reasonably should have known facts material to the unlawful act, whichever of these two periods is longer, regardless of whether the unlawful act occurred more than six years before the date the lawsuit was filed. Notwithstanding the preceding sentence, in no event shall a person proceeding under this subsection recover for an unlawful act that occurred more than 10 years before the date the lawsuit was filed.

Tex. Hum. Res. Code § 36.104(b). The court has not found, and the parties have not provided, any Texas state court cases interpreting this provision of the THFPA. In the absence of other guidance, the court interprets the statute's plain text, which appears to track the federal limitations period. For the reasons stated with respect to the federal statute, Relator's claim against McKesson under the Texas FCA is also untimely.

The court recommends that McKesson's motion be **GRANTED**. *See Salas*, 2022 WL 1487024, at \*8 (stating that the court may grant a motion to dismiss under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the claim is barred by the statute of limitations). Relator's claims against McKesson should be dismissed with prejudice for failure to state a claim.

### B. UT Physicians

UTP argues that Relator's claims against it should be dismissed for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6). ECF No. 58 at 1. The court first considers whether UTP is an arm of the state to determine whether the court has subject matter jurisdiction over the claims against UTP.

Absent consent to suit, waiver of immunity by the State, or congressional abrogation of sovereign immunity, the Eleventh Amendment bars an individual from suing a state in federal court. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing U.S. Const. Amend. XI). Because Eleventh Amendment sovereign immunity deprives the court of jurisdiction, barred claims can be dismissed only under Federal Rule of Civil Procedure 12(b)(1) and without prejudice. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996). The court must resolve whether it has subject matter jurisdiction prior to addressing the merits of any claims. *Doe v. United States*, 853 F.3d 792, 798 (5th Cir. 2017), *as revised* (Apr. 12, 2017).

The FCA does not permit a cause of action against a State or state agency. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 787 (2000). In deciding whether an entity is an "arm of the state" such that it cannot be liable under the FCA, the court uses a six-factor test. *U.S. ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Houston*, 544 F. App'x 490, 495 (5th Cir. 2013)

8

(citing *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986)). The court considers:

> (1) whether the state statutes and caselaw characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Id.*

To determine whether it has subject matter jurisdiction, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *United States ex rel Johnson v. Raytheon Co.*, 93 F.4th 776, 783 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 356 (2024).

UTP argues that UTHealth is a protected arm of the state, and that as "the faculty group practice of UTHealth[,]" UTP is also immune from liability under the FCA. ECF No. 58 at 7–8.

As to the first factor, a Texas court of appeals has held that "[j]urisdictional facts do not conclusively establish that UTP is a governmental unit entitled to immunity[.]" *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 77 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The court explained that

> UTP is affiliated with the University of Texas System. The UT System includes the University of Texas Health Science Center at Houston (UTHSCH), which has immunity from suit. The UT Board of Regents authorized UTHSCH to establish a subsidiary entity, UTP. UTP operates a medical clinic at which UTHSCH teaching physicians provide medical care to

patients and medical instruction to physicians in the
UTHSCH residency programs.

*Id.* In *Lenoir*, the court considered whether UTP qualified as a
governmental unit under the Texas Tort Claims Act, which
required considering whether UTP had a legislative or
constitutional source of authority. *Id.* That question corresponds
to the first of the six factors. The court found that "UTP does not
qualify as a 'governmental unit' . . . because it received its power
and authority from UTHSCH, as authorized by the UT Board, and
not from a legislative or constitutional source." *Id.* at 79, 81 ("mere
status as a wholly-owned subsidiary . . . does not shield UTP with
another entity's immunity from suit").

UTP does not cite, and the court has not found, any Texas
caselaw finding that UTP is a government entity or an arm of the
state. UTP also does not cite, and the court has not found, any
Texas statutes stating that UTP is a government entity. The Texas
Education Code states that UTHSCH is a part of the University of
Texas System and that the University of Texas System is
composed of "such other institutions and entities as from time to
time may be assigned by specific legislative act to the governance,
control, jurisdiction, or management of The University of Texas
System." Tex. Educ. Code § 65.02(a)(9), (b). UTP has not shown
that any legislative act has included UTP as a component of the
University of Texas System. The first factor weighs against finding
that UTP is an arm of the state.

The second factor, the source of funds for the entity, is the
most significant factor in assessing an entity's status. *U.S. ex rel.
King*, 544 F. App'x at 496. UTP argues that its funding comes from
the State and that "the only potential source of funds for payment
of any judgment in this case would be funds belonging to
UTHealth, and ultimately, the State[.]" ECF No. 58 at 8. The

evidence that UTP provides to support this assertion merely states that if UTP is dissolved, all of its assets will be transferred to UTHSCH. ECF No. 58-1 at 5, 9 (updating the entity's name to U.T. Physicians). It is not clear to the court that UTP is *funded by* the state. As it stands, the court cannot make a determination as to the second factor.

As to the third factor, UTP argues that it has little autonomy, that UTHealth appoints UTP's Board of Directors, and that UTP only operates as directed by UTHealth. ECF No. 58 at 9. UTP refers the court to UTP's Articles of Incorporation to support these arguments. Even if this factor weighed in favor of UTP being an arm of the state, the court could still not make a determination about UTP's ultimate status because the court is unable to make a determination about the final three factors. As to the fourth factor, UTP argues that it provides statewide services, but it does not provide any evidence to support this assertion. ECF No. 58 at 9. As to the fifth factor, UTP merely states that this factor has little weight. As to the sixth factor, UTP states that "UTP, as a ledger line in UTHealth's financial statements, holds property on behalf of the Board of Regents[.]" *Id.* UTP does not provide evidence supporting this statement.

Relator argues that, at best, the court should "allow discovery on this point." ECF No. 63 at 8. The court agrees. When the Government is sued, subject matter jurisdiction is at issue, and the court must resolve whether it has subject matter jurisdiction prior to addressing the merits of any claims. *Doe*, 853 F.3d at 798. If subject matter jurisdiction is lacking, the court must dismiss the claims without reaching the merits. *Id.* Because there are insufficient facts before the court about UTP's status as an arm of the state, the court is unable to determine whether it has subject matter jurisdiction over Relator's claims against UTP.

11

The court recommends that UTP's motion to dismiss be **DENIED** without prejudice to raising the same arguments in a later motion to dismiss pursuant to Rule 12(b)(1) after the parties engage in jurisdictional discovery as to UTP's status. *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) ("while a court should determine whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact"). The court will enter a schedule as to jurisdictional discovery in a separate order.

### C. Change Healthcare

As to Change, Relator has sued the wrong entity. Relator alleges that Change (Change Healthcare, Corp., a/k/a Change Healthcare Engagement Solutions, Inc.) contracted with UTP to provide revenue cycle management services. ECF No. 39 at ¶¶ 3, 6–7, 19–22, 178. Change argues that, as a threshold matter, "the Change Healthcare Entities did not contract with UT Physicians or perform the relevant services at issue in Relator's Complaint." ECF No. 59 at 8. Change attaches to its motion to dismiss the Physician Billing Service Agreement (the Agreement) with UTP and argues that the Agreement demonstrates that it is the wrong party to this suit. *See* ECF No. 59-1. There is no dispute that the agreement is valid and binding on the parties to it. The court first must determine whether it may consider the Agreement at this stage in the proceedings.

To determine whether a claim survives a Rule 12(b)(6) motion to dismiss, the court's inquiry is usually limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *De Leon v. Munoz*, No. 24-40215, 2025 WL 957500, at *7 (5th Cir. Mar. 31, 2025). Documents

that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and if they are central to plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *De Leon*, 2025 WL 957500, at *7.

Courts have held that documents are central to a plaintiff's claims when they are necessary to establish an element of one of the plaintiff's claims. *Johnson v. Wells Fargo Bank*, *NA*, 999 F. Supp. 2d 919 (N.D. Tex. 2014); *Piper Jaffray & Co. v. Omni Surgical, LLC*, No. 14-CV-814, 2015 WL 3687946, at * (W.D. Tex. June 12, 2015), *R. & R. adopted*, No. 14-CV-814, 2015 WL 13649107 (W.D. Tex. July 8, 2015); *St. v. Maverick Tube Corp.*, No. 15-CV-02736, 2016 WL 8711338, at *3 (S.D. Tex. June 17, 2016), *R. & R. adopted*, No. 15-CV-2736, 2016 WL 3948106 (S.D. Tex. July 19, 2016).

The court finds that the Agreement between UTP and Change is central to Relator's claims because it is necessary to establish that Change was involved in the alleged fraudulent course of conduct.[3] Relator alleges that "[f]or more than twenty years UT Physicians has contracted with Defendants McKesson and/or Change Healthcare to provide revenue cycle management services on behalf of UT Physicians." ECF No. 39 at ¶ 3. Relator does not allege that Change's involvement in the fraud scheme was independent of the contract. Relator does not explain how Change was plausibly involved in the fraud other than by virtue of its role under the contract. Relator does not allege or argue that Change could be responsible for the actions of the actual party to the

---

[3] A violation of the FCA occurs when (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259 (5th Cir. 2014).

contract. Thus, the only way Change can be liable is if it is a party to the contract. The contract is therefore central to Relator's claims and referred to in the complaint. Accordingly, the Agreement and its relevant amendments are considered part of the pleadings, and the court will consider them here.

The Agreement is between UTP and Change Healthcare Technology Enabled Services, LLC (CHTES). ECF No. 59-3 at 1; ECF No. 59-1. Relator's claims are against Change Healthcare, Corp., a/k/a Change Healthcare Engagement Solutions, Inc. ECF No. 39 at 1. It is undisputed that these are two distinct corporate entities.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Relator has not met her burden. She has named an entity that is not a party to the contract and has not pleaded any theory of liability, such as alter ego, that would allow the court to hold non-contracting parties liable. *Cf. In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 367, 391 (D. Mass. 2008) (dismissing FCA claims against a parent company where "[e]ach wrongful act alleged by the Relator implicates only [the subsidiary], not . . . the corporate parent"); *compare U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 545–547 (N.D. Tex. 2010) (denying a motion to dismiss an FCA claim where Relator's complaint included allegations supporting that the parties were alter egos). Relator has brought her claims against the wrong entity. Thus, the court recommends that Change's motion, ECF No. 59, be **GRANTED** and Relator's claims against Change be dismissed with prejudice for failure to state a claim.

14

### 4. Conclusion

The court recommends that Defendant McKesson's Motion to Dismiss, ECF No. 56, be **GRANTED**; Defendant UTP's Motion to Dismiss, ECF No. 58, be **DENIED** without prejudice pending jurisdictional discovery; and Defendant Change's Motion to Dismiss, ECF No. 59, be **GRANTED**.

The parties have *fourteen* days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Responses to objections, if any, are due *seven* days thereafter. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August  27 , 2025.

Peter Bray
United States Magistrate Judge

15